OPINION
{¶ 1} James W. Harrison, D.V.M., appellant, appeals from a judgment of the Franklin County Court of Common Pleas, in which the court affirmed the order of the Ohio Veterinary Medical Licensing Board ("board"), appellee, in which the board found that appellant violated R.C. 4741.22(A), Ohio Adm. Code 4741-1-21, and former Ohio Adm. Code 741-1-03(A).
 {¶ 2} Appellant is a veterinarian specializing in orthopedic surgery. On January 29, 2004, Wesley Templeton brought his six-month-old Labrador retriever, Maximus, to appellant for an examination of his rear hips. Appellant does not have x-ray *Page 2 
equipment at his site, but he sent Maximus to a nearby facility to obtain hip x-rays. After reviewing the x-rays, appellant diagnosed Maximus as having hip dysplasia. On the same day, appellant performed a triple pelvis ostectomy on Maximus's left hip. Maximus recovered well. On March 15, 2004, Maximus returned to appellant's office, and appellant reviewed Maximus's right hip. Appellant determined that his right hip should undergo total hip replacement. On July 22, 2004, appellant commenced a total hip replacement on Maximus, who was then 12 months old, using the "Richards System" and a "Richards prosthesis." The Richards System was one of the first prosthesis systems and has only two single-piece prosthesis sizes available, while newer systems are modular and allow the surgeon to interchange numerous different sized stem and cup pieces. However, during the surgery, it became apparent that the Richards prosthesis was too large for Maximus's femur, and appellant had to perform an alternative surgery, a femoral head ostectomy. Prior to the surgery, appellant claimed he had compared a trial prosthesis to Maximus's January 2004 x-ray, and it appeared that the prosthesis was the appropriate size. It is undisputed that appellant did not perform any updated x-rays immediately prior to the surgery. After the surgery, Templeton filed a complaint with the board regarding Maximus's poor post-surgery condition.
 {¶ 3} After referring the case for an opinion from Dr. Michael Kowaleski, an orthopedic surgery specialist at The Ohio State University School of Veterinary Medicine, the board notified appellant it was considering action against him based upon various statutory and regulatory violations, including violations of R.C. 4741.22(A) and Ohio Adm. Code 4741-1-03(A), for his failure to take updated x-rays of Maximus's right hip prior to the July 2004 surgery, and his failure to conduct proper pre-operative templating to *Page 3 
assure he had the proper size prosthesis available; and Ohio Adm. Code 741-1-21, for his failure to list the medications and dosages used during the surgery in Maximus's record. On January 8, 2007, the board's hearing examiner conducted a hearing regarding the violations, and, on September 6, 2007, the hearing examiner filed a report and recommendations, finding that appellant had violated R.C. 4741.22(A), Ohio Adm. Code 4741-1-21, and 4741-1-03(A). Appellant filed objections to the hearing examiner's report and recommendations. On October 11, 2007, the board affirmed the hearing examiner's report. The board suspended appellant's veterinary license for one month and fined him $1,000.
 {¶ 4} On October 27, 2007, appellant appealed the finding and order of the board to the Franklin County Court of Common Pleas. On March 20, 2007, the court issued a judgment affirming the board's order. Appellant appeals the judgment of the court, asserting the following assignment of error:
 I. THE FINDING OF THE TRIAL COURT DETERMINING THE DISCIPLINARY ACTION OF THE OHIO VETERINARY MEDICAL LICENSING BOARD IS CONTRARY TO LAW AS THE VETERINARY MEDICAL LICENSING BOARD'S DECISION IS NOT SUPPORTED BY THE QUANTUM OF EVIDENCE REQUIRED PURSUANT TO O.R.C. § 119.12.
 {¶ 5} Appellant argues in his assignment of error that the common pleas court erred when it found that the board's orders were supported by reliable, probative, and substantial evidence and were in accordance with the law. Under R.C. 119.12, when a common pleas court reviews an order of an administrative agency, it must consider the entire record and determine whether the agency's order is "supported by reliable, probative, and substantial evidence and is in accordance with the law." "Reliable" evidence is evidence that is dependable and may be confidently trusted. Our Place, Inc. *Page 4 v. Ohio Liquor Control Comm. (1992), 63 Ohio St.3d 570, 571. In order to be reliable, there must be a reasonable probability that the evidence is true. Id. "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. Id. "Substantial" evidence is evidence with some weight; it must have importance and value. Id.
 {¶ 6} The common pleas court's review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof. Lies v. Veterinary Med. Bd. (1981),2 Ohio App.3d 204, 207, citing Andrews v. Bd. of Liquor Control (1955),164 Ohio St. 275, 280. Even though the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, the findings of the agency are not conclusive. Univ. ofCincinnati v. Conrad (1980), 63 Ohio St.2d 108, 111.
 {¶ 7} An appellate court's standard of review in an administrative appeal is more limited than that of a common pleas court. Pons v. OhioState Med. Bd. (1993), 66 Ohio St.3d 619, 621. It is not the function of the appellate court to examine the evidence. Id. The appellate court is to determine only if the trial court has abused its discretion. Id. Abuse of discretion is not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Id. Absent an abuse of discretion on the part of the trial court, an appellate court may not substitute its judgment for that of an administrative agency or a trial court. Id. Nonetheless, an appellate court does have plenary review of purely legal questions in an administrative appeal. Big Bob's, Inc. v. Ohio Liquor ControlComm., 151 Ohio App.3d 498, 2003-Ohio-418, at ¶ 15. Accordingly, *Page 5 
we must also determine whether the common pleas court's decision is in accordance with law.
 {¶ 8} In the present case, the board found appellant had violated R.C. 4741.22(A), Ohio Adm. Code 4741-1-21, and former Ohio Adm. Code 741-1-03(A). R.C. 4741.22 provides, in pertinent part:
 The state veterinary medical licensing board may refuse to issue or renew a license, limited license, registration, or temporary permit to or of any applicant who, and may issue a reprimand to, suspend or revoke the license, limited license, registration, or the temporary permit of, or impose a civil penalty pursuant to this section upon any person holding a license, limited license, or temporary permit to practice veterinary medicine or any person registered as a registered veterinary technician who:
 (A) In the conduct of the person's practice does not conform to the rules of the board or the standards of the profession governing proper, humane, sanitary, and hygienic methods to be used in the care and treatment of animals[.]
Ohio Adm. Code 4741-1-21 provides, in part:
 (A) Every veterinarian performing any act requiring a license pursuant to the provisions of Chapter 4741. of the Revised Code shall prepare, or cause to be prepared, a record documenting the health status of the animal(s) treated and any necessary data such that another veterinarian may follow the rationale and continue therapy if necessary. The record shall be dated and shall include all pertinent medical data such as vaccination, drug types and doses and all relevant medical and surgical procedures performed. The records shall identify the owner of the animal(s) and provide an address and telephone number or other means of contact.
Former Ohio Adm. Code 4741-1-03(A) provided:
 The board shall pursuant to section 4741.22 of the Revised Code and to the extent permitted by law, take action against the license of any veterinarian, for a violation of any of the following regulations: *Page 6 
 (A) A departure from, or the failure to conform to, minimal standards of care of similar practitioners under the same or similar circumstances, whether or not actual injury to a patient is established.
 {¶ 9} With regard to R.C. 4741.22(A), and Ohio Adm. Code 4741-1-03(A), the board found appellant had failed to adequately adhere to the minimum standards necessary prior to performing a total hip replacement on Maximus, including the failure to take an updated x-ray and the failure to properly template Maximus. Specifically, the hearing examiner concluded that, although the use of the Richards System did not fall below minimum standards per se, appellant fell below the minimum standard for care when he failed to have all prosthesis options available to him at the time of surgery and ignored newer techniques available that would have increased the chances of having the appropriately sized prostheses on hand when he was to perform the total hip replacement surgery. The hearing examiner also found that minimum standards of a specialist required that x-rays be taken prior to the surgery and all possible templating be completed to ensure the specialist has the correct size implant.
 {¶ 10} Appellant presents several arguments as to why the trial court abused its discretion in finding that the board's orders were supported by reliable, probative, and substantial evidence. Appellant argues that he properly templated Maximus by placing a trial prosthesis in direct proximity to the x-ray to determine whether the size was appropriate to permit the Richards prosthesis. He contends that, although he used a six-month-old x-ray from January 2004 to template, there was no need to take an additional x-ray in July 2004, because the bone would either be the same size or slightly larger. He also maintains that he precisely followed the Richards System. Appellant asserts that a well-known risk of hip replacement surgery is that the surgeon discovers after the surgery *Page 7 
has begun that the implant does not fit the actual bone. Dr. Michael Kowaleski, the board's expert, and Dr. Ronald Montgomery, appellant's expert, agreed that this was one risk of the procedure.
 {¶ 11} Appellant's arguments are unavailing. Appellant's arguments primarily focus upon his contention that he properly utilized the Richards System and properly templated the bone according to the protocol under the Richards System. However, the decision of the hearing examiner was not based upon the premise that appellant improperly performed the surgery under the Richards System protocol. Rather, the true crux of the hearing examiner's recommendation was that appellant fell below the minimum standard of care by relying solely upon the Richards System instead of having all prosthesis options available to him at the time of surgery and ignoring newer techniques available to him that would have increased the chances of having the appropriately sized prostheses on hand when he was to perform the total hip replacement surgery. Despite the fact that appellant is correct that Maximus's femur should have been bigger, or at least the same size, at the time of surgery than it was at the time of the x-ray six months earlier, such does not detract from the ultimate conclusion of the hearing examiner and board that appellant should have been knowledgeable about newer prosthesis systems and should have utilized these updated systems to assure the best possible outcome for the patient. Appellant ignored newer prosthesis techniques available to him that allowed for more variable sizes, and it is this circumstance that was found to constitute a violation of the Ohio Administrative Code and Ohio Revised Code. Appellant does not present any argument as to why this conclusion was in error, and we fail to find the trial court abused its discretion or was otherwise not in accordance with the law. *Page 8 
 {¶ 12} Appellant also argues that he, in fact, templated the prosthesis by placing a trial prosthesis near the January 2004 x-ray. However, the only evidence of such templating came from appellant's own testimony at the hearing. Gary Hill, the agent for the Ohio Department of Agriculture, testified that appellant told him that there was no way to pre-operatively determine the actual size of the replacement joint needed because the magnification effect of the x-rays does not permit templating. Likewise, in the Ohio Department of Agriculture's investigative summary, the investigator stated that appellant indicated there was no way to know what size replacement joint was needed prior to surgery, and that x-rays were unreliable due to the magnification effect. Furthermore, Dr. Michael Kowaleski, the board's expert witness who is a veterinary orthopedic surgeon, testified at the hearing that the records provided no evidence that pre-operative templating was performed. Also, even if appellant did compare the Richards prosthesis to the January 2004 x-ray, Dr. Kowaleski testified that to conduct proper templating, the surgeon should use x-rays that are less than a week old. Therefore, for the above reasons, we find appellant's arguments with respect to R.C. 4741.22(A) and Ohio Adm. Code 4741-1-03(A) are without merit.
 {¶ 13} With regard to Ohio Adm. Code 4741-1-21, the board found that appellant violated his recordkeeping requirements by not documenting the medications administered in accordance with the board's rules. Specifically, the hearing examiner found that, although appellant complied with federal recordkeeping requirements by keeping a log of the medications used, the records did not comport with Ohio Adm. Code 741-1-21 because appellant did not list the medications used within the patient's own treatment record. *Page 9 
 {¶ 14} Herein, appellant argues that there is nothing in the language of Ohio Adm. Code 4741-1-21 to suggest his medication recordkeeping practices were in violation of such. Appellant asserts that, consistent with federal requirements, he maintains a log where he records his administration of anesthetics and controlled substances to his patients. Appellant contends that there is a risk associated with recording the dispensation of controlled substances in both the federally mandated log and the individual patient charts because a federal audit would take the position that he dispensed double the amount of medications. He also points out that the medication log is maintained in immediate proximity to the individual patient charts, and he is the only person in control of both the patient charts and controlled substances log. Appellant urges that Ohio Adm. Code 4741-1-21 does not require him to maintain everything in one location; rather, the information need only be accessible so that a complete record can be prepared upon request.
 {¶ 15} We disagree with appellant's reading of Ohio Adm. Code 741-1-21. Ohio Adm. Code 4741-1-21(A) explicitly requires that a veterinarian "shall" prepare "a record [that] shall include all pertinent medical data such as vaccination, drug types and doses and all relevant medical and surgical procedures performed." The requirement could be no clearer. A veterinarian must keep a record that includes the drug types and doses dispensed to a patient, along with all other pertinent medical data. Appellant's contention that federal authorities would believe he dispensed double the amount of drugs if he noted the drugs dispensed in both the federal log and the patient record is unsupported and unpersuasive. It is undisputed that appellant failed to indicate in Maximus's July 22, *Page 10 
2004 patient chart the methods, types, and dosages of all drugs he used in the course of surgery, and such was a clear violation of Ohio Adm. Code 4741-1-21.
 {¶ 16} Further, Ohio Adm. Code 4741-1-21 specifically states that the reason for including such information in the patient's record is so that "another veterinarian may follow the rationale and continue therapy if necessary." If veterinarians were permitted to keep a separate log of medications dispensed to all patients, there would be no indication of the medications used in the patient's individual record if an emergency arose and another doctor had to treat the patient or if the patient later transferred to another doctor. With no indication in the patient's individual record that medications had been used, a veterinarian would have the onerous task of specifically remembering that the patient had been dispensed medication sometime in the past and then copying the information into the patient record from the separate log before transmitting the patient record to another doctor. The rationale behind Ohio Adm. Code 4741-1-21(A) is apparent: Documenting the medications and dosages used directly in the patient's record eliminates potential errors and lapses in memory and improves patient care. Therefore, we can find no error in the board's conclusion that appellant violated Ohio Adm. Code 4741-1-21. Appellant's assignment of error is overruled.
 {¶ 17} Accordingly, appellant's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
 McGRATH, P.J., and SADLER, J., concur. *Page 1